We'll hear the next case, Il-Rae Homaidan. May it please the court, Tom Farrell on behalf of the Navient Appellants. This case, of course, is a statutory interpretation question that, in our view, presents a very simple question. Does the ordinary public plain meaning of the phrase, obligation to repay funds received as an educational benefit, cover a student loan from a private lender? If the answer to that question is yes, that effectively should end the inquiry. Under the Supreme Court's decision in 1992 in Connecticut Bank v. Germain, the court recognized that a cardinal rule, the first and primary rule of statutory construction, is to determine what the plain meaning of the statute is based on ordinary usage and ordinary understanding. Counsel, just to address precisely what you're saying, isn't that a stilted and peculiar way of saying student loan? Your Honor, respectfully, I don't think it is. Obviously, I acknowledge that the Tenth Circuit and the Fifth Circuit have gone against me on this issue. Well, you're here. We turn the lights on. We don't have to follow them. I'm just asking whether that phrase, which you say is so easy to construe, isn't really a very stilted way of saying student loan, because that's what you say it means. Your Honor, respectfully, I don't believe so. And part of the reason I say that is for more than a decade after the amendments in 2005 that are at issue here, dozens of courts around the country construed this statute the very way I suggest it should be construed. And frankly, this court among them, and I cite the DeSormes case for that proposition, and obviously I recognize... Are you saying that the words benefit, scholarship, or stipend mean loan? I'm saying that the term educational benefit, when coupled with the phrase obligation to repay, is in fact broad enough and does cover a student loan. If that's true, why do we need subsection 1? Why do we need B? Well, Your Honor, I can see that there is overlap among the statutes, and we've addressed that in the brief, and the superfluity canon of construction. But as we've pointed out, the case law makes clear, the Supreme Court case law... What was the purpose of this section? The obligation to repay funds received as an educational benefit, scholarship, or stipend? What was the intent of Congress? Well, Your Honor, the only legislative history that exists on the inclusion of that language relates to when it was first included in the statute in 1990. And the legislative history, although I don't believe it's something the court need resort to, suggests that it was added to deal with the circumstances set forth in an Eighth Circuit case called U.S. Department of Health v. Smith 807 F. 2nd 122 from 1986. And the irony here is that if that is why Congress added this language to the statute, it in fact created intentionally a redundancy. Because in the Smith case that the language was supposedly addressing, the issue was whether a scholarship that was granted to a medical student that was contingent on that medical student practicing in a particular area for a particular period of time. And when the student failed to meet that condition, he was obligated to repay the quote-unquote scholarship. The court in the Eighth Circuit determined that that, in fact, was a loan that was already within the definition of loan in the statute. But Congress then added this language purportedly to address that situation, but therefore added a redundancy into the statute. So what we know from the legislative history is that Congress intentionally, as a belt and suspenders approach, put redundancies into this statute. Now, in 2005, this language, which had originally been in one subsection, which with what is now A1, was separated out into its own separate section in A2. It seems to me that what this section was intended to cover was a situation where someone got, for example, a scholarship and then messed up. The GPA fell below a required average or something, and there arose an obligation to pay it back. And in that scenario, why should the person benefit from having messed up, and therefore it's not dischargeable? Does that seem right? Your Honor, I can see that this language covers that situation. The question before the court is whether that's the only situation the statute covers, and we respectfully submit it's not, especially when you— Isn't that the only situation that makes sense when you look at the whole thing? Respectfully no, Your Honor, because what happened in 2005, when this statute was broken out, when this language was broken out into its own subsection in A2, it divorced this from its prior connection to government and nonprofit stipends, benefits, and scholarships. And the 2005 amendments to the statute were part of Congress's attempt to broaden this statute to cover private, not just governmental and nonprofit loans, benefits, and stipends. If you accept the interpretation that's offered by the other side, the statute actually creates an anomaly that makes no sense. And by that I mean it would protect a private employer, for example, who grants a stipend or a benefit to an employee. It says if you go to—we'll pay your tuition if you come back and work for us for three years. If you don't work for us for three years, you've got to pay it back. Well, under the interpretation that the other side proffers, that private employer who is making that stipend or grant for its own profit motivation as part of its business gets protected, but a private lender who is making a private loan to attend the same school for the same purpose doesn't get— Well, the private lender intended it to be repaid, but the question is whether or not the term benefit is broad enough here just on its face to cover an obligation to repay a loan. Why shouldn't we read the word benefit as a cousin to the other specific term, scholarship or stipend? No one gets a stipend and is told they have to repay it unless it's conditional, and some of them are. Well, Your Honor, the whole premise here, again, on the other side and in the Fifth Circuit and the Tenth Circuit is that a loan is something that always has to be repaid, and a grant or a stipend is something that usually does not have to get repaid, and that premise is just wrong. I mean, one need look no further than—I hearken back to the prior argument about the COVID situation. One need only look at the payment protection plan, the PPP plan that's out there in the universe today. That is a loan program. A borrower signs a promissory note and promises to repay that note, but it is forgivable in some circumstances, so a loan is not something that necessarily always has to be repaid. A grant or a stipend, on the other hand, is not something that never has to be repaid. It often has to be repaid by agreeing to, you know, be a doctor in a certain area or agreeing to be employed for a certain period of time, or if you don't do that, by repaying it in cash. So I don't believe that the premise of interpreting benefit in the same way stipend or scholarship should be interpreted carries weight. If you apply an everyday meaning of the word benefit, the dictionary defines it as an advantage, a profit, a privilege, or a gain. Getting a loan to go to school at an interest rate that's favorable because it's a student loan is a gain, a privilege, or an advantage that you get. Thank you. Well, you have some time for rebuttal. We'll hear from Mr. Carpinello. Thank you, Your Honor. George Carpinello, Boies Schiller Flexner for the Plaintiff-Appellees. Your Honor, there's at least five reasons why the decision below should be affirmed. First, Navien is barred by collateral estoppel. They argued this very issue in the Fifth Circuit Court of Appeals and lost. They argued the exact same issue in the Tenth Circuit Court of Appeals and lost. They conceded in their brief that the same argument, the exact same issues were litigated in both cases. They had a full and fair opportunity to litigate. Now, Navien argues that we waived this issue because we didn't argue below. That's incorrect. When we briefed this issue below, there was no Court of Appeals decision in either the Fifth or Tenth Circuit. There was one district court opinion in our—the Crocker lower court opinion. But Navien makes the argument under Parklane that offensive collateral estoppel shouldn't apply when there are two inconsistent decisions. So at that stage, we did not have a good collateral estoppel argument. We now do. We now have two Court of Appeals decisions on the exact same issue against them. I think it's about time that Navien should be told they can't make this argument anymore. So we think their claim is barred by collateral estoppel. In addition to that, the—Navien's argument, as I think your honors recognize, renders the rest of the statute utterly superfluous. Why would a—why would a private lender have to show that there was government involvement under A.I. or that its loan was a qualified education loan as defined by the Internal Revenue Code, which is very specific, if it all had to do was to get relief under this section, A.I.I., which they now say covers all loans? If A.I.I. covers all loans, then the rest of the statute is written off the books. In Judge Jacobs in the ABC versus DEF case, 500 F. 3rd 103, Judge, you recited the well-established principle that you should read a statute so as not to render other provisions of the statute superfluous. This renders the entire section, except this one provision, entirely superfluous. That's also inconsistent with the well-established principle that rules which make debts non-dischargeable are to be narrowly construed. Obviously, Mr. Farrell would construe this section very, very broadly and, as Judge Jacobs points out, would clearly stretch the meaning of the words. That's contrary to the principle that an exception from non—from dischargeability should be narrowly construed. Third, nowhere in the section Mr. Farrell relies on is the word loan used, which, as Judge Stone pointed out, is an extremely odd way to say loan if, in fact, two other sections in the very same statute use the word loan. A.I. says—A.I. says loans—loans which are government-guaranteed or funded or funded by not-for-profits are non-dischargeable. And B. says that loans which qualify as qualified education loans under the Internal Revenue Code are non-dischargeable. This section does not even use the word loan. Congress could not have intended this section to apply to loans if it used the word loans in the two companion sections which sandwich this provision. Next, Mr. Farrell's interpretation violates the principle of nosotrosis of unpronouncing that correctly. That is, you have to look at the word in relationship to its cousins in the same statute. This section talks about stipends. It talks about scholarships. And those are obviously not loans. Those are conditional grants which, if you do not meet the conditions, you have to repay. That's not a loan. A loan you have to repay. In virtually every—there may be some conditional loans, but virtually every loan, and certainly in this area, you have to repay those loans. The loans that Navient makes—Navient does not make a single conditional loan. Navient makes loans, and you have to repay the loans. And this—Judge Chin, you asked the question, why was this put into place? This was put into place in 1990 after that Eighth Circuit case, which Mr. Farrell acknowledges, which was a conditional grant case. In that case, the person was given money for school on the condition that they complete their employment. They did not complete their employment. And as Mr. Farrell says, the Eighth Circuit stretched to bring it within the statute, which it clearly did not. And in response to that decision, the court said, yes, if you get a benefit, stipend, or scholarship, an obligation that arises from that, that's non-dischargeable. So that's clearly what the purpose was of the statute. And the legislative history, as sparse as it is, clearly supports that interpretation. There's nothing in the legislative history that supports the notion that it includes— —acknowledges—this was added in 1990. If, in fact, this was intended to cover loans, why would Congress in 2005 amend the statute to cover certain private loans under very specific conditions? In 2005, for the first time, Congress expressly included private loans within the non-dischargeability provisions of the statute. But only if it met conditions of the Internal Revenue Code, namely, that it was made to a student attending a Title IV institution and did not exceed the cost of attendance at that institution. Otherwise, the private loan is dischargeable. Now, if Congress made those conditions, why would it do that if it had already said 15 years earlier, any loan is non-dischargeable? Why would it do that? It makes absolutely no sense. Finally, they cite the de Sormes case, which was decided by this court. The de Sormes case is a summary order and, therefore, is of no precedential value. Secondly, it was argued by a pro se litigant. Third, the issue—the primary issue in front of the court was not this issue. This was not—that panel did not have the benefit of all these decisions or of the arguments that you have, Your Honors, today. And the primary issue argued was an issue argued by the debtor who said, I don't have to repay the loan because I did not get the funds directly that went to the school. That was obviously a frivolous argument and was the primary argument addressed by the court. And the court, in one sentence, references 8-2, but clearly did not undertake the analysis that is present here. So for all these reasons, Your Honor, we think the decision below should be affirmed. Thank you. Thank you. Mr. Farrell, you have some time for rebuttal. Thank you, Your Honor. I'm just going to address very briefly the collateral estoppel argument. And just simply to note that Judge Stong, when this argument was belatedly brought forward in response to our motion to stay the case pending this appeal, Judge Stong carefully analyzed the collateral estoppel argument and found it to have no merit. That is in her bench ruling on August 19th of 2020, and I believe she adequately covered the collateral estoppel issue. The notion here that my interpretation should be rejected because it renders certain aspects of the statute redundant is ironic and should not be followed because, as the legislative history demonstrates, Congress specifically intentionally added this language knowing it was redundant because it was in response to an Eighth Circuit case that had already interpreted conditional grants to be loans. And as the Supreme Court has made clear, the superfluity canon and analysis only holds water and only is an appropriate guide to decision-making when the contrary interpretation of the statute would resolve all redundancies. And here, there is no interpretation of the statute that resolves all redundancies, so the superfluity canon is not appropriate for use here. We respectfully submit, as this court, although albeit in a non-precedential way, understood in disarms that this language is broad enough to cover student loans as obligations to repay funds received as an educational benefit.  Thank you both. The court will reserve decision, and at this point, we're going to see if Judge Nardini can fix his volume, his audio. I'm going to sign out and sign right back in. You sound pretty good right now. Oh, do I? You sound better than you were before. Okay, well, I cleared my throat a couple times. Maybe that improved things. Let's just go forward like this, then. Thank you. All right. Well, here...